You may begin whenever you're ready, Counsel. Thank you, Your Honor. May it please the Court, my name is Amy Langerman, and I have the privilege of representing R. M., the student in this IDEA appeal, and I would like to try to reserve three minutes for rebuttal. I'd like to begin my argument by pointing out three givens that will set in context what we're here to decide today. Number one, the Supreme Court has now explained what FAPE, a free and appropriate public education, means for a student with an intellectual disability. It does not require them to perform in the same way or make the same progress as a non-disabled peer. Rather, they need an IEP with challenging objectives that will allow the student to make progress that is meaningful in light of their circumstances. In this context, meaningful progress is usually measured by the IEP goals and objectives. Two, Congress has mandated that students with disabilities be educated in the least restrictive environment, LRE. That means in this context that we look at the Ninth Circuit's Rachel H. Standards. Three, the Code of Federal Regulations designed to implement the congressional policy of inclusion require that students with a disability attend the same school that they would attend if they were not disabled, the home school, the neighborhood school. In this context, they will go to their home school unless the IEP provides unique services that are necessary for FAPE and are unavailable at their home school. Counsel, I just, this is a very unusual case. I've had a number of these over my years. As you can imagine, this is the first time I've ever seen parents argue that the school was doing too much for their child. Usually the argument is they're unwilling to give us the services. They're unwilling to give us the amount of time that's required for our child. It just seems weirdly backwards. It doesn't mean that you're necessarily wrong, but I just, it seems highly unusual. Let me respond. First of all, the parents are not arguing that they're providing too much. The parents are arguing that this child is making appropriate progress in light of his circumstances, progress that a developmental psychologist testified in affidavit was appropriate and meaningful in light of his circumstances. There's evidence on both sides of that question, and I guess that brings me to another issue that I'd like you to address. It seems to me that the evidence that's in this record could support what the district has called for. It doesn't require that. It's not the only evidence, but there is evidence to support it, and where that's true, what sort of deference, if any, do we give to the factual findings and the judgments of the district where there is evidence to support their recommendations? And the law is very clear on that in the ML case and the Timothy O case. If the ALJ did not look at evidence that was critical to the analysis or had the incorrect standard, then we do not give deference. Well, that's a roundabout way of saying that we normally do give deference, isn't it? Absolutely, Your Honor, but here it's important to remember temporarily that Andrew F. came out after the administrative law judge's finding and literally a week before my brief was due in the district court. And in light of that, we need to focus on what is the relevant factors. Your Honor says that there are two sides to the facts in this case, and we would submit that that's not true. Under Mavis v. Sobel and County of San Diego v. Seho, when we're looking at whether or not a change is necessary for the student, whether a student has received FAPE, we look at the IEP and the progress on the IEP goals. We urge Your Honors to take a look at pages 101 and 102 of the ER. It is a goal-by-goal summary relating to the actual progress reports that the IEP mandated be issued to measure progress every quarter. And on those goals, Your Honor, this student made progress on 100 percent of them, a hundred percent. And there is something wrong with a situation where a district steps in and unilaterally seeks to move a student from his congressionally preferred home school where he is making progress on 100 percent of the goals and to claim that we can do better, a standard that this Court rejected in affirming Rachel H. That has never been the standard. And rest assured, if Congress tomorrow sought to change the standard to a better standard where districts were required to place students in the best placement where the most progress could be made, parents would hail the day, ticker-tape parade in D.C. for Congress. But that isn't the standard. It isn't the law. Congress has adopted an LRE standard, which districts support, a best standard with bankrupt districts, because often the best placement is worse. Well, there's an interesting question about the least restrictive in a way, because at his current school, as I understand it, the students' special minutes are spent one-on-one because there are no other children with disabilities similar enough. Is that correct so far? Is his time one-on-one at the current school? It's one-on-one, but not for that reason. Well, ignore the reason. He's doing that one-on-one, and as I understand the proposal, the change of location would give him more social interaction with other children because the skills classroom would be the replacement for one-on-one time. Is that true? Is that the replacement for the one-on-one minutes? Correct. The skills is designed to replace the one-on-one time, the minutes in the resource room. But it's important, if you'd look at, please, ER 338, this is the September Kindergarten Amendment. The reason the student was in the resource room one-to-one was, quote, to limit distractions in order to benefit more from the specialized instruction. They could have brought in other students, Your Honor, and differentiated instruction, just like he was getting in the general ed classroom, where he's in small groups socializing with his peers with neurotypically developing language and neurotypically developing social skills. They chose to keep him alone because they could demographically keep him alone, and it was better for him. I'm sorry, the limiting distractions were distractions for RM or distractions for the remainder of the students? No, no, for RM. If you remove everybody, we can focus on pacing exactly at the pace he needs, providing exactly the interaction and instruction that would benefit him and provide, quote, more benefit. So they determined, based on his needs, the needs are a need for repetition and the need for intensive instruction, that's what his IEP provided for in the resource room, would be better for him one-to-one. And now they want to move him with other children who would distract him. So one could argue, if we wanted to look at what was appropriate for him, based on his IEP, that it was more appropriate if that was the standard, but it's not. Claiming that he's now going to be distracted in the skills program at Pioneer Elementary seems counter to the parents' argument that they wanted him mainstreamed as much as possible. The skills program is not a mainstream program.  That's not the point. I understand that. Putting him there. But it does seem to be closer to mainstreaming when you can put somebody with other students as opposed to having the one-on-one. But he's with other students all day in the general education classroom. He's in small group in the general education classroom all day. The testimony from the general education teacher was that he's in a reading group with others who needed supplemental instruction in the general ed classroom. He plays math games. This is kindergarten, so they do math activities that are games. When they're doing writing, he's doing writing. The problem here is, because they have engaged in this sleight of hand by calling it a change of location, they don't want you to look at the where. They want you instead to look at a math computation, and this is the danger of this decision. If you look at this IEP where the words LRE appears, you don't see the setting that this other Rachel H. case, Rachel H. versus Hawaii, identified was the congressionally mandated environment. Regular education, which provides for supplemental services in a resource room. Separate class, separate school. That is the continuum of placements in order of restrictiveness. On this IEP, are the words that will be- Excuse me. The change of location is not per se more restrictive. A change of location, by its terms, is supposed to be identical on the setting you're on. There are Ninth Circuit cases that define location, and you're arguing with that, but on your continuum, I didn't understand your continuum, because at least in this case, the new school that is recommended, the different school that is recommended, is not per se a restrictive environment. The skills class is a separate- I understand that. The school itself is just another elementary school in the same district. It's just another elementary school that is not his congressionally required homeschool. It's not required, by the way. I agree that CFR is creating a preference, but not a requirement. Where do you see the word required? It is required unless the IEP has unique services. That's the Letter to Trigg case that OSEP's interpreted that language as requiring placement at the homeschool unless the IEP provides unique services that have been centralized, and those are the hearing-impaired cases and things of that nature. And here, the skills classroom is not available at his current school, is it? It is not available at his current school. And so if that is the most appropriate setting, then the unless clause that you are relying on is met. No, because the unless clause looks at the type of services, Your Honor, and whether they're unique. And they've gone to great lengths to explain, and we agree, that the services would remain the same. Basic reading, basic math, basic writing. That's available at every school, including his homeschool. But not in a social environment, not in an environment where he has the added benefit of being with other students. But his IEP does not require that he receive his supplemental instruction in a small group. His IEP, according to ER 338, says that it's better for him to get the specialized services one-to-one. He gets small group with typically developing peers all day long. His IEP requires something different, intensive, individual services for basic reading, writing, and math. And whether you want to call it a location or a placement, the critical factor here is the why. Importantly, no one contended that he wasn't making progress. They've admitted he was making progress. Mitz Waltz, in her opening statement to the ALJ, said he's making progress. What law? Well, as you know, the Supreme Court says some progress isn't necessarily enough. Nobody made the argument, Your Honor, here that this was minimal progress. They do now in the briefs. But look at the record. He made progress on 100% of his goals, 100%. And we're talking about goals that are uniquely tailored for him. And what were the teachers concerned about? They weren't looking at his goals when they were testifying. They said the other students are reading. He's identifying letters. The other students are adding and subtracting. He's counting to 13. The other students are writing sentences. He's drawing lines. Oh my, he doesn't belong. But his IEP didn't require him to read or do addition or to write sentences. It required him to do what he was doing. So you're using the time that you wanted for rebuttal? I understand. And I will reserve the rest of my time for rebuttal. Good morning, Your Honors. May it please the Court. Erin Walsh on behalf of the Gilbert Public Schools. It is not about trying to do more or better for the student. It's about trying to provide him with a meaningful educational benefit. And there's two distinct issues, as there has been since January 2016 IEP team meeting. Two issues, both of which the district has asked to implement regardless of the other. Twenty additional service minutes for this student. He is not in Gen Ed all day. Not today. Never has been. He currently receives 105 minutes a day of specialized instruction. The IEP team proposes that that is increased to 125 minutes. The second proposal from the IEP team is where to implement, and the district has said they would like to implement his IEP in the skills classroom. He does not have any peers currently in the resource room. His IEP does not call for one-on-one instruction. It calls for small group, and he does not have cognitive peers that the resource teacher could use as peers in the instruction of this student. That is what the testimony was adhering. We would love to have him with other students, but there are no peers for him. So the idea that it is one-on-one because everybody likes it that way is not what the record reflects. The special education teacher testified extensively about how she thinks he will benefit from being in the skills classroom. That he needs to have the infusion that that classroom offers. So as we look at both of these issues, location, the placement, this court is very clear in how to decide whether or not to change, whether or not to allow a change if it is location or placement. Can we implement his IEP as written? Yes. Yes, we can. Because service minutes are separate. Say you deny the service minute increase. That's fine. Can we implement his IEP as written? Yes, we can. The district are the educational professionals that we call on to make those decisions. And this court has said we're allowed to specialize. We're allowed to have specialized programs. We can aim higher than some are good enough for the kids under our care. We are aiming for better than just good enough. And what we heard and what we... I have Wilson v. Marana, Your Honor. Oh, that's interesting.  Wilson v. Marana, there was a specialized teacher at a campus five miles away. And the district wanted that student to go to that other school, not the neighborhood school, because the teacher was specialized. So these cases largely involve movement from a neighborhood school to a school farther away. That is correct, Your Honor. And he has... And RM has a sister who's at Ashland. He does indeed. He does indeed. But it is our job to make sure that he has access to all of the various things that make an education important. So the... Did the school take into account transportation? Certainly. And if he requires transportation to the school five miles away, they'll provide transportation. Did it take into account impact on the family? To the extent that the internal runnings of the family are part of our decision making, certainly. And there was a point when other options were considered, as far as busing back and forth for a half day at his neighborhood school versus a half day at Skills. But what it came down to was the district believes he is not obtaining any benefit from the Gen Ed classroom and we need to give him an education. How do we do that? And the Skills room was the proposal. It is the best suited environment with the most specially trained professionals and his peers in his disability so that they can all come together and help this student make some meaningful progress. So the Skills classroom is what was reached. We did consider his access to typical peers, whether or not, if we go to the Rachel H. factors, all of that was considered for the increase in service minutes. But on the location, the Fisher factors dictate that we look at non-academic benefits. He's still going to have all of those. He's still in Gen Ed for the same percentage of the day. It's just Gen Ed at a different school. What is your response to counsel's argument that the deciding factor should be that the student made some progress on 100% of the goals that were set? Well, some progress would be a denial of FAPE in any other case. So I don't think some progress is a FAPE. I have worked extensively with looking at how this student did and none of his educators believed he was in the right setting, believed that he was getting what he's entitled to. And Andrew F. says we're to be ambitious. It doesn't say let's limit this kid. We did a test on one day. We did one test. We did an IQ test. Here's his IQ. These are his circumstances. Don't aim high. I can't imagine how we would explain that standard to our families. That is not what the Ninth Circuit is about. This is one of the only circuits that didn't have to scramble with new law when Andrew F. came out because we were already aiming high, appropriately ambitious. Good enough. His teacher said he's an island. He's alone with his para in the back of the Gen Ed classroom. You would think we were trying to harm the child. We're trying to help, truly trying to help, keeping him in Gen Ed the majority of his day regardless of location or service minutes. This is not about full inclusion. It's not about segregation. The IDEA specifically left certain pieces to the schools. It says he needs to be at his neighborhood school to the extent appropriate unless the student requires otherwise. If the mandate was the neighborhood school, we would be recreating programs on every campus with limited resources because no one's going anywhere. The system just isn't feasible when you approach it that way. We need to be able to specialize. Turning back to the Fisher factors, his IEP can be implemented as written in the skills classroom. He will have the same access to non-academic benefits, the same access to his typical peers. Is it the same placement on the continuum? Yes, it is. The name we put on a classroom does not change its position on the continuum. It simply doesn't. Continuum is about access to general education. It's an LRE continuum. Are we pulling him further out and segregating him? What the IDEA is designed to prevent. If he is receiving the same minutes in the same fashion in the skills classroom or in the resource classroom, to say that that's a different placement on the continuum is contrary to everything that the IDEA and the cases say. This is a change in location. Both lower courts looked at it accordingly, as they needed to. This is location. This court has been really clear on the letter to Fisher factors and that decision should be upheld. Similarly, the Rachel H. analysis that's used for 20 extra service minutes. I would point out that the 20 minutes, there was a compromise made in the IEP meeting. Most of the members wanted to increase his minutes by 30. Parents were resistant to that, so we compromised at 20. Ten minutes in math, ten minutes in writing. Those are the two subjects he made the least amount of progress in. He made the most in reading. He gets 60 minutes a day. Yes, your honor. I was just going to say, as my memory was, that the place where he made progress was the place where he had many more minutes devoted to pull out. He currently receives 60 minutes a day in reading. That is where he made the most progress. The least amount of progress was in math and writing. We're seeking to add ten minutes to each of those. The Rachel H. analysis, you can go straight through. I don't need to tell you the factors, but in this one, the educational benefit, the first factor, absolutely, unequivocally supports increasing the student's minutes. There was not a single piece of evidence or testimony at the hearing that student obtained any educational benefit in the gen ed classroom, none. So is he making progress on his goals? You bet he is. These teachers are doing Herculean efforts to recreate the appropriate program for him in an environment that is not most conducive to his learning, but he obtained no benefit from sitting in the back of the gen ed classroom with his para. The benefit comes from his specialized instruction. We should be allowed to increase that by 20. Some of the law coming out of this circuit says that the first factor can be dispositive, but if it isn't, the rest of the factors similarly weigh in favor of the increase. The non-academic benefits, he still gets those. It's 105 minutes a day versus 125, still has the majority of his day with his gen ed peers. He's not being denied that in any fashion. Whether or not he's a disruption to the class, there was some evidence on that, but it wasn't a deciding factor for anyone through the chain up to this court, and cost was a non-issue. So Rachel H. says, as the lower courts appropriately determined, that providing the student with an additional 20 minutes is in his best interest, is his LRE and the provision of FAPE for him. Similarly, the location should be allowed to be changed. All of the analysis that this court furthers and agrees with indicates that we are allowed to change his location, that it is the appropriate way to provide a meaningful educational benefit to this student, and a conflation of these issues, as was seen in the briefing, is contrary to all of the law. It's contrary to the IDEA. It ends up overturning decades of law under this circuit, and it is not what is best for this student. So two distinct issues, both of which have been appropriately addressed in the lower court. Are there any further questions? I don't believe so. Thank you. Thank you. Ms. Langerman, you have some rebuttal time remaining? Your Honor, I'll be brief. If the only issue in implementing an IEP on LRE was the computation of math minutes, we would abolish the issue of setting, which Rachel H. v. Hawaii makes clear is a where. Stephen R.F. that we cited this past week makes clear that there are two separate issues, both the number of minutes as well as the setting, and Rachel H. makes clear, Rachel H. v. Holland, makes clear that when we're selecting, we're looking for the least restrictive placement in which FAPE can be achieved. Yeah, but setting and location are two different things, too. Setting means things like, is there, you know... Separate school, separate classes. Right, right. I agree, Your Honor, but what we're looking at here is the least restrictive environment where FAPE can be achieved. That's the standard. That's the standard the teacher should have been applying, but they were not, and when Ms. Welch says to you that he didn't make any progress, that is actually the first standard under Rachel H. And the fact is that if he even just made some progress, under Rachel H. that takes us to the second and third factor, because in Rachel H. the court said that a placement that might allow more academic benefit is nonetheless too restrictive if it is not the student's least restrictive environment. And the fallacy of Ms. Welch's argument is best replicated by the fact that she says to you, he's going to have the same general education minutes. That's what she says. That's their argument. Because they made it a change of location, they did not change that. And think about that. They want you to believe he's languishing in the back of the class, and he isn't receiving any benefit whatsoever, yet they're going to sustain it as it was. That cannot be true. In part, it's a compromise with the parents. They wanted more minutes, did they not? They wanted 30. But that relates to his pull-out time, Your Honor. If indeed he was languishing in general ed and receiving zero academic benefit there, they would need to do what they did in Wilson v. Morana, which is not a change of location case but a change of placement. They found she wasn't receiving FAPE, so they were required because she had unique services with a specialized teacher that wasn't available at her own school. They had to even move her to a different district to get the CP teacher for her child with cerebral palsy. So that was a FAPE case with unique services. Here, in order to look at what benefit is, where some meaningful she wants, she claims want meaningful, and you're suggesting that we're saying that some is enough. We're suggesting, Your Honor, he made meaningful benefit, and the only person who's qualified to determine that is a developmental psychologist, because it has to be based on what is the expectancy for a student. None of these... That's all. You've used your time, and you may use a sentence to wrap up if you'd like. Your Honor, R.M. found his least restrictive appropriate environment, attending school with his sister, in his community, at his home school, in a general education placement, receiving supplemental services in the resource room that was enabling him to make progress that was 100% of his goals, that was meaningful three months into his kindergarten year. Thank you, counsel. The case just argued is submitted. We appreciate helpful arguments from both of you in this challenging case.
judges: Graber, Bybee, Harpool